John M. Toriello
Marc L. Antonecchia
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, New York 10019
john.toriello@hklaw.com
marc.antonecchia@hklaw.com

*Attorneys for Plaintiff*
*CIT FINANCE LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CIT FINANCE LLC,

                      Plaintiff,

      - against -

ZHONGLONG INTERNATIONAL
INVESTMENT HOLDING CO., LIMITED,
WELLS FARGO BANK NORTHWEST,
NATIONAL ASSOCIATION, not in its individual
capacity but solely as owner trustee, and HONG
KONG AIRLINES CORPORATE JET
MANAGEMENT LIMITED,

                      Defendants.

15 Civ. _____ (   ) (   )

**COMPLAINT**

---

      Plaintiff, CIT FINANCE LLC ("CIT FINANCE" or "Lender"), by and through its attorneys Holland & Knight LLP, as and for its Complaint against defendants, ZHONGLONG INTERNATIONAL INVESTMENT HOLDING CO., LIMITED ("Zhonglong"), WELLS FARGO BANK, NORTHWEST, NATIONAL ASSOCIATION, not in its individual capacity but solely as owner trustee ("Wells Fargo, Owner Trustee"), and HONG KONG AIRLINES CORPORATE JET MANAGEMENT LIMITED ("Corporate Jet Management," and collectively with Zhonglong, Wells Fargo, Owner Trustee, the "Defendants"), upon information and belief, alleges as follows:

## THE PARTIES

1.   CIT FINANCE is a limited liability company that is duly organized and existing under the laws of Delaware and maintains its principal place of business at 1 CIT Drive, Livingston, New Jersey 07039.  The sole member of CIT FINANCE is CIT Bank, N.A., a North American banking association that maintains its principal place of business at  888 East Walnut Street, Pasadena, California, 91101.

2.   Upon information and belief, Zhonglong is a company that is duly organized and existing under the laws of the country of Bermuda and maintains its principal place of business at Clarendon House, 2 Church Street, Hamilton HM 11 Bermuda.

3.   Upon information and belief, Wells Fargo, Owner Trustee is a United States banking association that maintains its principal place of business at 260 N. Charles Lindbergh Drive, Salt Lake City, Utah.

4.   Upon information and belief, Corporate Jet Management is a company that is duly organized and existing under the laws of Hong Kong and maintains its principal place of business at Suite 805-809, One Citygate, 2 Tat Tung Road, Tung Chung, Lantau, Hong Kong.

## JURISDICTION AND VENUE

5.   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. Complete diversity of citizenship exists because this action involves a dispute between citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 as a dispute arising under the Convention on International Interests in Mobile Equipment, Nov. 16, 2001, S. TREATY DOC. NO. 108-10 (2003), 2307 U.N.T.S. 285 (hereinafter "Cape Town Convention") and Protocol to the Convention on International Interests in Mobile Equipment on

Matters Specific to Aircraft Equipment, Nov. 16, 2001, S. TREATY DOC. NO. 108-10 (2003) (hereinafter "Aircraft Protocol")

7.     This Court has personal jurisdiction over defendants Zhonglong and Wells Fargo, Owner Trustee because each consented to the jurisdiction of this Court with respect to the loan agreement, mortgage security agreement, and other operative documents at issue in this matter.

8.     This Court has personal jurisdiction over defendant Corporate Jet Management because it consented to the jurisdiction of this Court with respect to the aircraft management agreement assignment at issue in this matter.

9.     Venue is properly based in this District pursuant to 28 U.S.C. § 1391 because defendants Zhonglong, Wells Fargo, Owner Trustee, and Corporate Jet Management are subject to the jurisdiction of this Court.


**BACKGROUND**

A.     **The Loan Agreement**

10.     CIT FINANCE (as Lender), Wells Fargo, Owner Trustee (as Borrower), and Zhonglong (as Owner Participant) entered into a Loan Agreement dated as of September 5, 2013 (the "Loan Agreement").

11.     Pursuant to the Loan Agreement, Wells Fargo, Owner Trustee obtained a Loan (as that term is defined in Annex I of the Loan Agreement) in the amount of $17,570,000 from CIT FINANCE, the proceeds of which were used to fund Wells Fargo, Owner Trustee's acquisition of an Aircraft (as that term is defined in the Loan Agreement).

12.     Pursuant to Annex I to the Loan Agreement, the Aircraft consists of (a) the Gulfstream Aerospace model GIV-X (G450) airframe, bearing manufacturer's serial number 4148, Bermuda registration number VQ-BCE, and any and all appliances, Parts (as that term is

defined in Annex I to the Loan Agreement), accessories, instruments, avionics, navigational and communications equipment, modules, components, and other items of equipment installed in or furnished with such Airframe; (b) two (2) Rolls Royce Tay model 611-8C engines, bearing manufacturer's serial numbers 85300 and 85301, and any and all appliances, parts, accessories, instruments, components and other items of equipment normally installed on engines of this model, including those installed therein or furnished therewith, and (c) the Aircraft Documents (as that term is defined in Annex I to the Loan Agreement).

13.     The obligation of Wells Fargo, Owner Trustee to repay the Loan to CIT FINANCE is evidenced by a Promissory Note dated September 5, 2013.

14.     Pursuant to Section 2.4(a) of the Loan Agreement, Wells Fargo, Owner Trustee is obligated to make a Monthly Payment (as that term is defined in Annex I to the Loan Agreement) to CIT FINANCE consisting of, among other things, principal and interest.

15.     Pursuant to Section 7.22 of the Loan Agreement, Wells Fargo, Owner Trustee is obligated to cause Zhonglong to maintain the Aircraft in compliance in all material respects with all statutes, laws, ordinances, regulation and standards and directives issued by the Bermuda Department of Civil Aviation (BDCA), Federal Aviation Administration (FAA), and any other Aviation Authority (as that term is defined in Annex 1 to the Loan Agreement) applicable to the maintenance thereof and to keep the Aircraft in such operating condition as may be necessary to enable the airworthiness certification of such Aircraft to be maintained in good standing at all times.

16.     Pursuant to Section 7.26(d) of the Loan Agreement, Wells Fargo, Owner Trustee is obligated to pay or procure payment of all expenses arising directly or indirectly in connection with or related the use, maintenance, movement, operation, storage, or location of the Aircraft.

4

17.     Pursuant to Section 9.1(a) of the Loan Agreement, Wells Fargo, Owner Trustee's continuing failure to make any Monthly Payment beyond ten (10) calendar days of when such payment was due and payable constitutes an Event of Default under Section 9.1(a) of the Loan Agreement.

18.     Pursuant to Section 9.1(d) of the Loan Agreement, there is an Event of Default if any Borrower Party (as that term is defined in Annex 1 to the Loan Agreement and which includes Wells Fargo, Owner Trustee and Zhonglong) is in breach or default of any Loan Document (as that term is defined in Annex I to the Loan Agreement) to which it is a party or fails to perform, keep or observe any term, covenant, or agreement contained therein.

19.     Pursuant to Section 9.1(e) of the Loan Agreement, there is an Event of Default if there is a Material Adverse Change (as that term is defined in Annex 1 to the Loan Agreement) with respect to any Borrower Party.

20.      Pursuant to Section 9.3(b) of the Loan Agreement, if an Event of Default shall have occurred and is continuing, the Lender may, *inter alia*, declare the Promissory Note then outstanding to be due and payable.

21.     Pursuant to Section 9.3(c) of the Loan Agreement, each and every right, power, and remedy given to CIT FINANCE under the Loan Agreement or any other Loan Document is cumulative and in addition to every other right, power, and remedy that CIT FINANCE has by agreement or under law.

22.     Pursuant to Section 10.5(b) of the Loan Agreement, following the occurrence of an Event of Default, Wells Fargo, Owner Trustee and Zhonglong shall pay to CIT FINANCE within thirty (30) days after demand the amount of any and all out-of-pocket expenses, including but not limited to attorneys' fees, in connection with the successful enforcement of any rights or remedies under any Loan Document.

23.     Pursuant to Section 10.5(c) of the Loan Agreement, following the occurrence of an Event of Default, Wells Fargo, Owner Trustee shall pay or reimburse CIT FINANCE within ten (10) Banking Days (as that term is defined in Annex 1 to the Loan Agreement) after demand for all costs incurred by CIT FINANCE in conducting any inspection of the Aircraft or its related Aircraft Documents.

24.     Pursuant to Section 10.16 of the Loan Agreement, New York law governs the Loan Agreement in all respects, including all matters of construction, validity, and performance.

**B.      The Mortgage**

25.     As a condition precedent to CIT FINANCE entering into the Loan Agreement, Wells Fargo, Owner Trustee agreed to grant a mortgage and continuing interest in certain collateral.

26.     CIT FINANCE and Wells Fargo, Owner Trustee entered into a Mortgage and Security Agreement dated as of September 5, 2013 (the "Mortgage").

27.     Pursuant to Section 2 of the Mortgage, Wells Fargo, Owner Trustee granted CIT FINANCE a first priority lien on, security interest and International Interest (as that term is defined in Section 1(c) of the Mortgage) in and to certain property and rights of Wells Fargo, Owner Trustee, including, among other things:  (i) the Aircraft, (ii) all right title and interest of Wells Fargo, Owner Trustee in and to the Lease Agreement (as defined in Annex I to the Loan Agreement and discussed more specifically below) with respect to the Aircraft, all Lease Payments (as defined in Annex I to the Loan Agreement), rent, and other payment paid or payable thereunder, and (iii) any Aircraft Related Agreement and Related Assets (as those terms are defined in Annex I to the Loan Agreement) (collectively, the "Collateral").

28.     Pursuant to Section 4 of the Mortgage, upon the occurrence and during the continuation of an Event of Default under the Loan Agreement, CIT FINANCE is entitled,

without demand, presentment, or notice to, *inter alia*, (a) take any and all actions deemed necessary by CIT FINANCE, in its sole discretion, with respect to the Collateral, including the giving of consent, waiver, and ratifications; (b) take possession of the Collateral to the fullest extent permitted by Applicable Law, without notice, hearing or process, and, in the process of taking possession, enter upon any real property or improvements thereon to obtain such Collateral; (c) sell, assign and deliver, or grant options to purchase, all or any part of the Collateral, or any interest therein, at any public or private sale, without demand of performance, advertisement or notice of intention to sell or of the time or place of sale.

29.    Pursuant to Section 4 of the Mortgage, CIT FINANCE has the rights and remedies available to secured parties under the Cape Town Convention, including, but not limited to take possession of the Aircraft and to sell, lease or otherwise dispose of the Aircraft, to procure the deregistration of the Aircraft and export the Aircraft to a jurisdiction of CIT FINANCE's choice.

30.    Pursuant to Section 7 of the Mortgage, upon the occurrence and during the continuance of an Event of Default, Wells Fargo, Owner Trustee will, upon demand, pay to CIT FINANCE the amount of all out-of-pocket expenses, including the fees and expenses of counsel, in connection with, *inter alia*, the exercise or enforcement of any of the rights under the Mortgage.

31.    Pursuant to Section 21 of the Mortgage, New York law governs the Mortgage in all respects, including all matters of construction, validity, and performance.

**C.      Mortgage Supplement No. 1**

32.     CIT FINANCE and Wells Fargo, Owner Trustee entered into Mortgage Supplement No. 1 dated September 5, 2013.

33.     Mortgage Supplement No. 1 specifically describes the Aircraft being mortgaged to CIT FINANCE, which includes (a) the Gulfstream Aerospace model GIV-X (G450) airframe, bearing manufacturer's serial number 4148, Bermuda registration number VQ-BCE, and any and all appliances, Parts, accessories, instruments, avionics, navigational and communications equipment, modules, components, and other items of equipment installed in or furnished with such Airframe; (b) two (2) Rolls Royce Tay model 611-8C engines, bearing manufacturer's serial numbers 85300 and 85301, and any and all appliances, parts, accessories, instruments, components and other items of equipment normally installed on engines of this model, including those installed therein or furnished therewith, and (c) the Aircraft Documents.

34.     Pursuant to Mortgage Supplement No. 1, Wells Fargo, Owner Trustee acknowledged that the Airframes and Engines referenced therein were delivered to Wells Fargo, Owner Trustee and are included in the property of Wells Fargo, Owner Trustee and subject to the Lien of the Mortgage.

**D.      Aircraft Lease Agreement**

35.     Wells Fargo, Owner Trustee (also referred to hereafter as the "Lessor") and Zhonglong (also referred to hereafter as the "Lessee") entered in an Aircraft Lease Agreement dated as of September 5, 2013 (the "Lease Agreement").

36.     Pursuant to the Lease Agreement, Wells Fargo, Owner Trustee leased the Aircraft to Zhonglong.

37.     Pursuant to Section 3 of the Lease Agreement, the term of the Lease Agreement commenced on September 5, 2013 and was to continue for so long as the Trust Agreement (as

that term is defined in the Lease Agreement) continued in force and effect or until the earlier termination of the Lease pursuant to Section 17 of the Lease Agreement.

38.     Pursuant to Section 4 of the Lease Agreement, Zhonglong accepted the delivery of the Aircraft on September 5, 2013.

39.     Pursuant to Section 6(a) of the Lease Agreement, Zhonglong agreed that its rental payments would include all costs, expenses, fees, and charges incurred in connection with the delivery, possession, use and operation of the Aircraft and each of item of Equipment, including but not limited to, any payments to be made by Lessor to CIT FINANCE, the Lender, under the Loan Documents, when due, directly to the person to whom such payment is due.

40.     Pursuant to Section 17(a) of the Lease Agreement, the Lessor may terminate the Lease and Lessee's rights under the Lease if Zhonglong, the Lessee, (i) fails to pay, when due, any payment required under Section 6 of the Lease Agreement, or (ii) fails to pay or perform any other obligation of Zhonglong, the Lessee, under the Lease Agreement or the Trust Agreement, provided such failure continues for thirty (30) days after written notice and Lessee fails to proceed diligently to correct the failure.

41.     Pursuant to Section 33 of the Lease Agreement, the Lease Agreement is subject to the terms and requirements of the Assignment of Aircraft Lease dated September 5, 2013 (described more specifically below) and the Loan Agreement, including the rights of CIT FINANCE to exercise any rights and remedies thereunder.

42.     Pursuant to Section 33 of the Lease Agreement, Zhonglong agreed to operate, maintain, and insure the Aircraft in accordance with the terms and conditions of the Assignment of Aircraft Lease dated September 5, 2013 and the Loan Agreement.

**E.     Assignment of Aircraft Lease Agreement**

43.     CIT FINANCE and Wells Fargo, Owner Trustee entered into an Assignment of Aircraft Lease Agreement made as of September 5, 2013 (the "Lease Assignment").  Pursuant to its terms, the Lease Assignment was acknowledged and agreed to by Zhonglong.

44.     Pursuant to Section 2.1 of the Assignment, Wells Fargo, Owner Trustee granted to CIT FINANCE a security interest in all of Wells Fargo, Owner Trustee's right, title, and interest in, to, and under the Lease. CIT FINANCE is entitled to collect all rents and other sums payable by Lessee to Lessor and, after the occurrence and during continuance of an Event of Default, CIT FINANCE is entitled to enforce all of Lessor's other rights and remedies under the Lease.

45.     Pursuant to Section 2.3 of the Lease Assignment, upon the occurrence and during the continuation of an Event of Default under the Loan Agreement, all rights and interest of Lessor in, to, and under the Lease are exercisable solely by and shall inure solely and exclusively to the benefit of CIT FINANCE.

46.     Pursuant to Section 3.1 of the Lease Assignment, Wells Fargo, Owner Trustee acknowledged and agreed to direct and cause Zhonglong to make all payments of rent and other payments due to CIT FINANCE pursuant to the Lease Agreement directly to CIT FINANCE.

47.     Pursuant to Section 5.7 of the Lease Assignment, New York law governs the Lease Assignment in all respects, including all matters of construction, validity, and performance.

**F.     The Aircraft Management Agreement and Assignment of the Aircraft Management Agreement**

48.     Zhonglong and Corporate Jet Management entered into an Aircraft Management Agreement made on July 31, 2013, as amended and supplemented from time to time (the "Management Agreement").

49.     Pursuant to Section 1.2 of the General Terms and Conditions of the Management Agreement, Corporate Jet Management agreed to perform certain Services (as that term is defined in Section 1.2 of the General Terms and Conditions of the Management Agreement) to Zhonglong with respect to the Aircraft during the period commencing on Delivery (as that term is defined in Section 3 of the Management Agreement) and ending on the termination of the Management Agreement.

50.     There has been no termination of the Management Agreement.

51.     On September 5, 2013, Zhonglong, CIT FINANCE, and Corporate Jet Management entered into an Assignment of Aircraft Management Agreement ("Management Agreement Assignment") pursuant to which Zhonglong assigned to CIT FINANCE all of Zhonglong's right, title and interest in, to, and under the Management Agreement.

52.     Pursuant to Section 9 of the Management Agreement Assignment, upon the occurrence of any Event of Default under the Loan Agreement, Lender has the right to, *inter alia*, enforce, modify, or terminate the Management Agreement; and repossess or demand return of the Aircraft, notwithstanding any rights or interests Corporate Jet Management or any other party may have.

53.     Pursuant to Section 9 of the Management Agreement Assignment, Zhonglong and Corporate Jet Management agreed to cooperate with CIT FINANCE's exercise of any rights,

powers, and remedies, including the return of the Aircraft to CIT FINANCE upon CIT FINANCE's demand.

54.     Pursuant to Section 18(a) of the Management Agreement Assignment, New York law governs the Management Agreement Assignment in all respects, including all matters of construction, validity, and performance. Pursuant to this same section and Section 16.8 of the Management Agreement, Hong Kong law governs the interpretation and performance of the terms of the Management Agreement.

**G.     The Share Charge**

55.     Zhu Jingtu (the "Chargor") and CIT FINANCE entered into a Share Charge dated September 5, 2013.

56.     Pursuant to the Share Charge, the Chargor represented that it owned 100% of the share capital of Zhonglong and, among other things, assigned all of its right, title, and interest in the shares issued by Zhonglong to CIT FINANCE as security for the obligations of Wells Fargo, Owner Trustee under the Loan Agreement.

57.     Pursuant to Section 1.1 of the Share Charge, an "Event of Default" means any breach by the Chargor of any provisions of the Share Charge.

58.     Pursuant to Section 4.5 of the Share Charge, the Chargor covenanted that it would not, without the prior written consent of CIT FINANCE, sell, assign, transfer, or otherwise dispose of any of its interest in the Charged Property (as that term is defined in Section 1.1 of the Share Charge).

59.     Pursuant to Section 3.5(e) of the Share Charge, the Chargor covenanted that it would not, without the prior written consent of CIT Finance, effect or permit the appointment of any new directors of Zhonglong.

**H.      Registration of CIT FINANCE's International Interest Pursuant to the Cape Town Convention**

60.      On September 5, 2013, the following registrations were filed on the International Registry for Interests in Mobile Equipment (Aircraft Equipment) as to the Gulfstream GIV-X (G450) airframe bearing manufacturer's serial number 4148:   (a) File Number 1028260: International Interest of 100%; Debtor Wells Fargo, Owner Trustee; Creditor CIT FINANCE; (b) File Number 1028275:  Assignment of File Number 1028267 (Debtor Zhonglong; Creditor Wells Fargo, Owner Trustee) from Wells Fargo, Owner Trustee, assignor, to CIT FINANCE, assignee; (c) File Number 1028287:  Assignment of File Number 1028267 (Debtor Zhonglong; Creditor Wells Fargo, Owner Trustee) from Wells Fargo, Owner Trustee, assignor, to CIT FINANCE, assignee;

61.      On September 5, 2013, the following registrations were filed on the International Registry for Interests in Mobile Equipment (Aircraft Equipment) as to the Rolls-Royce engine bearing manufacturer's serial number 85300:  (a) File Number 1028261:  International interest of 100%; Debtor Wells Fargo, Owner Trustee; Creditor CIT FINANCE; (b) File Number 1028276: Assignment of File Number 1028268 (Debtor Zhonglong; Creditor Wells Fargo, Owner Trustee) from Wells Fargo, Owner Trustee, assignor, to CIT FINANCE, assignee; (c) File Number 1028288:  Assignment of File Number 1028268 (Debtor Zhonglong; Creditor Wells Fargo, Owner Trustee) from Wells Fargo, Owner Trustee, assignor, to CIT Finance, assignee.

62.      On September 5, 2013, the following registrations were filed on the International Registry for Interests in Mobile Equipment (Aircraft Equipment) as to the Rolls-Royce engine bearing manufacturer's serial number 85301:  (a) File Number 1028262:  International interest of 100%; Debtor Wells Fargo, Owner Trustee; Creditor CIT FINANCE; (b) File Number 1028277: Assignment of File Number 1028269 (Debtor Zhonglong; Creditor Wells Fargo, Owner Trustee)

from Wells Fargo, Owner Trustee, assignor, to CIT FINANCE, assignee; (c) File Number 1028289:   Assignment of File Number 1028269 (Debtor Zhonglong; Creditor Wells Fargo, Owner Trustee) from Wells Fargo, Owner Trustee, assignor, to CIT Finance, assignee.

## EVENTS OF DEFAULT

**A.    Wells Fargo, Owner Trustee's and Zhonglong's Failure to Make Payments Due Under the Loan Agreement, Lease Agreement, and Lease Assignment**

63.    Pursuant to Section 2.4(a) of the Loan Agreement, Wells Fargo, Owner Trustee is obligated to make a Monthly Payment (as that term is defined in Annex I to the Loan Agreement) to CIT FINANCE.

64.    Pursuant to Section 3.1 of the Lease Assignment, Wells Fargo was obligated to cause Zhonglong to make all payments of rent and other payments due to Wells Fargo, Owner Trustee pursuant to the Lease Agreement directly to CIT FINANCE.

65.    Wells Fargo, Owner Trustee and Zhonglong have failed to pay to CIT FINANCE the Monthly Payment of $163,558.99 due on July 5, 2015, the Payment Date (as that term is defined in Annex I to the Loan Agreement) pursuant to Section 2.4(a) of the Loan Agreement and Section 6(a) of the Lease Agreement.

66.    Wells Fargo, Owner Trustee and Zhonglong have failed to pay to CIT FINANCE the Monthly Payment of $172,058.70 due on August 5, 2015, the Payment Date (as that term is defined in Annex I to the Loan Agreement) pursuant to Section 2.4(a) of the Loan Agreement and Section 6(a) of the Lease Agreement.

67.    Wells Fargo, Owner Trustee's and Zhonglong's continuing failure to make the Monthly Payments specified above beyond ten (10) calendar days of when each payment was due and payable constitutes respectively an Event of Default under Section 9.1(a) and Section 9.1(d) of the Loan Agreement and a default under Section 6(a) of the Lease Agreement.

**B.     Wells Fargo, Owner Trustee's and Zhonglong's Failure to Maintain the Aircraft**

68.     Pursuant to Section 7.22 of the Loan Agreement, Wells Fargo, Owner Trustee is obligated to cause Zhonglong to maintain the Aircraft in compliance in all material respects with any and all statutes, laws, ordinances, regulations, and standards or directives issued by the BDCA, FAA, and any other Aviation Authority applicable to the maintenance thereof and to maintain its operating condition so that the Aircraft is in such operating condition as may be necessary to enable the airworthiness certification of the Aircraft at all times.

69.     Pursuant to Section 7.26(d) of the Loan Agreement, Wells Fargo, Owner Trustee is obligated to pay for all maintenance and operating costs.

70.     Wells Fargo, Owner Trustee and Zhonglong, pursuant to Section 6(a) of the Lease, have failed to pay for maintenance and engine preservation that are required by the maintenance manual, including, but not limited to, repair items arising from the 6C maintenance check.

71.     Wells Fargo, Owner Trustee's and Zhonglong's failure to maintain the Aircraft in the condition required by the Loan Agreement constitutes respectively an Event of Default under Section 9.1(a) and Section 9.1(d) of the Loan Agreement and a default under Section 7 of the Lease Agreement.

72.     Wells Fargo, Owner Trustee's and Zhonglong's continuing failure to make the payment for maintenance and engine preservation runs beyond twenty (20) calendar days of when such payment was due and payable constitutes respectively an Event of Default under Sections 9.1(a) and 9.1(h) of the Loan Agreement and a default under Section 6(a) and Section 7 of the Lease Agreement.

**C.  Death of Chargor, Attempted Transfer of Zhonglong Shares, and Attempted Appointment of New Director to Zhonglong**

73.  On April 13, 2015 Zhu Jingtu, the sole principal and owner of Zhonglong, and the Chargor as defined in the Share Pledge, died.

74.  Upon information and belief, prior to Zhu Jingtu's death, Zhu Jingtu negotiated the sale of 50% of his ownership interest in Zhonglong, the special purpose vehicle holding an interest in the Aircraft and whose shares are pledged to CIT FINANCE, to Fu Songyang.  This attempted transfer was made without the consent of CIT FINANCE

75.  Upon information and belief, Fu Songyang paid the purchase price but the share transfer was never completed.

76.  Fu Songyang has commenced a proceeding against Zhu Jingtu's estate in Hong Kong for the return of the payment of the purchase price.

77.  Fu Songyang has filed a caveat against the grant of probate in respect of Zhu Jingtu's estate, styled *In the Estate of Zhu Jingtu*, pending in the High Court of the Hong Kong Special Administrative Region, Court of First Instance.

78.  Upon information and belief, the purpose of the caveat is to prevent the grant of probate in respect of and administration of Zhu Jingtu's estate so as to ensure the assets of Zhu Jingtu's estate are not disbursed without notice to Fu Songyang.

79.  Upon information and belief, prior to Zhu Jingtu's death, Zhu Jingtu appointed Fu Songyang as a Director of Zhonglong without the prior written consent of CIT FINANCE.

80.  As a result of the death of the Chargor, the attempted transfer of shares in violation of the Share Charge, the reported appointment of Fu Songyang as a Director of Zhonglong, and the filing by Fu Songyang of a caveat in the Hong Kong Probate Proceeding, there has been a Material Adverse Change (as that term is defined in Annex I to the Loan

Agreement) in Zhonglong, which constitutes an Event of Default under Section 9.1(e) of the Loan Agreement.

81.     The attempted transfer of certain shares of Zhonglong to a third party without the prior written consent of CIT FINANCE constitutes a breach of the Chargor's covenant under Section 4.5 of the Share Charge, which further constitutes an Event of Default under the Share Charge and an Event of Default under Section 9.1(d) of the Loan Agreement.

82.     The attempted appointment of Fu Songyang as a Director of Zhonglong without the prior written consent of CIT FINANCE constitutes a breach of the Chargor's covenant under Section 3.5(e) of the Share Charge, which further constitutes an Event of Default under the Share Charge and an Event of Default under Section 9.1(d) of the Loan Agreement.

**D.    Zhonglong's Failure to Make Payments Under the Rolls-Royce Corporate Care Contract and Wells Fargo, Owner Trustee's Failure to Procure Such Payments**

83.     Zhonglong and Rolls-Royce plc entered into a Rolls-Royce Corporate Care Contract, Reference number Z030.001.000 dated August 1, 2013.

84.     Pursuant to the Rolls-Royce Corporate Care Contract, Zhonglong was obligated to make certain payments to Rolls-Royce.

85.     Zhonglong has failed to remit the following payments due and owing to Rolls-Royce:  (a) Invoice No. Z030.001.000.2015.05 in the amount of $21,896, due on May 1, 2015; (b) Invoice No. Z030.001.000.2015.06 in the amount of $21,896, due on June 1, 2015; (c) Invoice No. Z030.001.000.2015.07 in the amount of $21,896, due on July 1, 2015; and (d) Invoice No. Z030.001.000.2015.08 in the amount of $21,896, due on August 1, 2015.

86.     Zhonglong's failure to remit the foregoing outstanding amounts to Rolls-Royce constitutes an Event of Default under Section 9.1(d) of the Loan Agreement and Sections 6 and 7 of the Lease.

87.     Wells Fargo, Owner Trustee's failure to procure Zhonglong's payment of the outstanding amounts to Rolls-Royce, pursuant to Section 7.26(d) of the Loan Agreement, constitutes an Event of Default under Sections 9.1(a) and (d) of the Loan Agreement.

## NOTICES OF GROUNDING, DEFAULT AND ACCELERATION, AND INSTRUCTION TO RETURN AIRCRAFT

**A.     Notice of Grounding Dated June 12, 2015**

88.     CIT FINANCE delivered to Corporate Jet Management a Grounding Notice dated June 12, 2015 ("Grounding Notice").

89.     In the Grounding Notice, CIT FINANCE (a) advised the Corporate Jet Management that an Event of Default occurred and was continuing under the Loan Agreement, (b) directed Corporate Jet Management to immediately cease all flight operations of the Aircraft; (c) to collect all Aircraft Documents; and (d) directed Corporate Jet Management to place the Aircraft and Aircraft Documents in safe storage at the premises of Corporate Jet Management, Tung Chung Lantau, Hong Kong.

**B.     Notice of Default and Grounding Dated June 12, 2015**

90.     CIT FINANCE delivered to Wells Fargo, Owner Trustee and Zhonglong a Notice of Default and Grounding of Aircraft dated June 12, 2015 ("Notice of Default").

91.     The Notice of Default declared that Wells Fargo, Owner Trustee's failure to maintain the Aircraft as required under Section 7.22 of the Loan Agreement constituted a default in its obligations under Section 9.1(d) of the Loan Agreement.

92.     In the Notice of Default, CIT FINANCE advised that it directed the Manager to suspend all flight operations and to collect all Aircraft Documents, and to keep the Aircraft and Aircraft Documents in safe storage.

**C.    Notice of Default and Acceleration Dated August 28, 2015**

93.    CIT FINANCE delivered to Wells Fargo, Owner Trustee and Zhonglong a Notice of Default and Acceleration dated August 28, 2015 ("Notice of Acceleration").

94.    The Notice of Acceleration set forth the breaches and Events of Defaults summarized in paragraphs 63 - 87 herein.

95.    In the Notice of Acceleration, CIT FINANCE demanded payment of the entire unpaid balance of the Promissory Note of $15,360,961.64, accrued and unpaid interest in the amount of $607,081.27 as of August 27, 2015, a Late Charge pursuant to Section 9.1(a) of the Loan Agreement in the amount of $21,067.98 as of August 27, 2015, costs associated with the maintenance and preservation of the Aircraft in the amount of $122,345.69, and all out-of-pocket costs, fees, and expenses incurred or to be incurred by CIT FINANCE in connection with enforcement of its rights.

**D.    Notice of Instruction to Return Aircraft**

96.    On September 11, 2015, CIT delivered to Corporate Jet Management an Instruction to Return Aircraft, which advised Corporate Jet Management of the continuing Events of Default and instructed Corporate Jet Management to return the aircraft to CIT no later than September 17, 2015 at Jet Aviation St Louis, Airport code: KCPS; 6400 Curtiss-Steinberg Dr. Cahokia, IL 62206.

**FIRST CLAIM FOR**
**BREACH OF THE LOAN AGREEMENT**

97.    CIT FINANCE repeats and realleges each and every allegation contained within paragraphs 1 through 96 inclusive of this Complaint with the same force and effect as if set forth at length herein.

98.     The Loan Agreement is a valid, binding and enforceable contractual agreement between and among CIT FINANCE, Wells Fargo, Owner Trustee, and Zhonglong.

99.     CIT FINANCE has fully performed all of its obligations under the terms of the Loan Agreement.

100.     To the extent that any obligations were not performed by CIT FINANCE, such obligations were excused by Wells Fargo, Owner Trustee's or Zhonglong's breach of the Loan Agreement.

101.     Wells Fargo, Owner Trustee has failed to pay the Monthly Payment of $163,558.99 due on the Payment Date of July 5, 2015.

102.     Wells Fargo, Owner Trustee has failed to pay the Monthly Payment of $172,058.70 due on the Payment Date of August 5, 2015.

103.     Wells Fargo, Owner Trustee's continuing failure to make each Monthly Payment beyond ten (10) calendar days of when such payment was due and payable constitutes an Event of Default under Section 9.1(a) of the Loan Agreement and a breach the Loan Agreement.

104.     Zhonglong has failed to pay the Monthly Payment of $163,558.99 due on the Payment Date of July 5, 2015, which constitutes a default in its obligations under Section 6(a) of the Lease Agreement.

105.     Zhonglong has failed to pay the Monthly Payment of $172,058.70 due on the Payment Date of August 5, 2015, which constitutes a default in its obligations under Section 6(a) of the Lease Agreement.

106.     Zhonglong's continuing failure to make each Monthly Payment beyond ten (10) calendar days of when such payment was due and payable constitutes an Event of Default under Sections 9.1(a) and (d) of the Loan Agreement and a breach of the Loan Agreement.

107. Wells Fargo, Owner Trustee has failed to maintain or cause Zhonglong to maintain the Aircraft in accordance with the terms of the Loan Agreement.

108. Wells Fargo, Owner Trustee's failure to maintain or cause Zhonglong to maintain the Aircraft in accordance with the terms of the Loan Agreement constitutes an Event of Default under Section 9.1(d) of the Loan Agreement and a breach of the Loan Agreement.

109. Zhonglong has failed to pay the amounts due for maintenance and preservation of the Aircraft, which constitutes a default of its obligations under Section 6(a) of the Lease Agreement.

110. Zhonglong's continuing failure to pay the amounts due for maintenance and preservation of the Aircraft beyond twenty (20) calendar days of when such payment was due and payable constitutes an Event of Default under Sections 9.1(d) of the Loan Agreement and a breach of the Loan Agreement.

111. As a result of the death of the Chargor, the attempted transfer of shares in violation of the Share Charge Agreement, the attempted appointment of Fu Songyang as a Director of Zhonglong, and the filing by Fu Songyang of a caveat in the Hong Kong Probate Proceeding, there has been a Material Adverse Change (as that term is defined in Annex I to the Loan Agreement) in Zhonglong, which constitutes an Event of Default under Section 9.1(e) of the Loan Agreement and a breach of the Loan Agreement.

112. The attempted transfer of certain shares of Zhonglong to a third party without the prior written consent of CIT FINANCE constitutes a breach of the Chargor's covenant under Section 4.5 of the Share Charge, which further constitutes an Event of Default under the Share Charge and an Event of Default under Section 9.1(d) of the Loan Agreement, and a breach of the Loan Agreement.

113.    The attempted appointment of Fu Songyang as a Director of Zhonglong without the prior written consent of CIT FINANCE constitutes a breach of the Chargor's covenant under Section 3.5(e) of the Share Charge, which further constitutes an Event of Default under the Share Charge and an Event of Default under Section 9.1(d) of the Loan Agreement, and a breach of the Loan Agreement.

114.    Zhonglong has failed to pay the expenses incurred pursuant to the Rolls-Royce Corporate Care Contract, Reference number Z030.001.000 dated August 1, 2013 between Rolls-Royce plc and Zhonglong, which constitutes a default in its obligations under Section 6(a) of the Lease Agreement.

115.    Zhonglong's continuing failure to pay the expenses incurred pursuant to the Rolls-Royce Corporate Care Contract beyond twenty (20) calendar days of when such payment was due and payable constitutes an Event of Default under Sections 9.1(d) of the Loan Agreement and a breach of the Loan Agreement.

116.    Wells Fargo's failure to procure Zhonglong's payment of the expenses incurred pursuant to the Rolls-Royce Corporate Care Contract constitutes an Event of Default under Sections 9.1(a) and (d) of the Loan Agreement, and a breach of the Loan Agreement.

117.    Pursuant to Section 9.3(b) of the Loan Agreement and Section 7 of the Promissory Note, CIT FINANCE has declared the Promissory Note to be immediately due and payable.

118.    To date, neither Wells Fargo, Owner Trustee nor Zhonglong has paid the amounts due and owing under the Promissory Note in the amount of $15,360,961.64, plus the accrued and unpaid interest in the amount of $607,081.27 as of August 27, 2015, a Late Charge pursuant to Section 9.1(a) of the Loan Agreement in the amount of $21,067.98 as of August 27, 2015, costs associated with the maintenance and preservation of the Aircraft in the amount of $122,345.69,

and all out-of-pocket costs, fees, and expenses incurred or to be incurred by CIT Finance in connection with enforcement of its rights.

119. As a direct and proximate result of Wells Fargo, Owner Trustee's breach of the Loan Agreement, CIT FINANCE has suffered, and will continue to suffer, damages in an amount to be determined at trial, but not less than $16,111,456.58, plus additional interest, costs and attorneys' fees.

## SECOND CLAIM FOR
## BREACH OF THE LEASE AGREEMENT AND LEASE ASSIGNMENT

120. CIT FINANCE repeats and realleges each and every allegation contained within paragraphs 1 through 119 inclusive of this Complaint with the same force and effect as if set forth at length herein.

121. The Lease Agreement and the Lease Assignment are valid, binding and enforceable contractual agreements between and among CIT FINANCE, Wells Fargo, Owner Trustee, and Zhonglong.

122. CIT FINANCE has fully performed all of its obligations under the terms of the Lease Assignment.

123. To the extent that any obligations were not performed by CIT FINANCE, such obligations were excused by Wells Fargo, Owner Trustee's or Zhonglong's breach of the Loan Agreement, the Lease Agreement, or the Lease Assignment.

124. In contravention of Section 6(a) of the Lease, Zhonglong has failed and continues to fail to pay the payments to be made by Wells Fargo, Owner Trustee, to CIT FINANCE, which includes the Monthly Payments of $163,558.99 and $172,058.70 due respectively on July 5. 2015 and August 5, 2015.

125.    In contravention of Section 6(a) of the Lease, Zhonglong has failed and continues to fail to pay the expenses incurred pursuant to the Rolls-Royce Corporate Care Contract, Reference number Z030.001.000 dated August 1, 2013 between Rolls-Royce plc and Zhonglong.

126.    In contravention of Section 6(a) of the Lease Agreement, Zhonglong has failed and continues to fail to pay the amounts due for maintenance and preservation of the Aircraft.

127.    In contravention of Section 6(a) of the Lease Agreement, Zhonglong has failed and continues to fail to pay the payment to be made by Wells Fargo, Owner Trustee, to CIT FINANCE, of the accelerated amount of $15,360,961.64, plus the accrued and unpaid interest in the amount of $607,081.27 as of August 27, 2015, a Late Charge pursuant to Section 9.1(a) of the Loan Agreement in the amount of $21,067.98 as of August 27, 2015, costs associated with the maintenance and preservation of the Aircraft in the amount of $122,345.69, and all out-of-pocket costs, fees, and expenses incurred or to be incurred by CIT Finance in connection with enforcement of its rights ("Accelerated Amount").

128.    Zhonglong's failure to make the Monthly Payments and the payment of the Accelerated Amount from Wells Fargo, Owner Trustee to CIT FINANCE beyond ten (10) calendar days after the due date for the respective payments constitute breaches of the Lease Agreement and Lease Assignment.

129.    As a direct and proximate result of Zhonglong's breach of the Lease Agreement and Lease Assignment, CIT FINANCE has suffered, and will continue to suffer, damages in an amount to be determined at trial, but not less than $16,111,456.58, plus interest, costs and attorneys' fees.

### THIRD CLAIM FOR
### POSSESSION OF THE AIRCRAFT AND AIRCRAFT DOCUMENTS

130.    CIT FINANCE repeats and realleges each and every allegation contained within paragraphs 1 through 129, inclusive, of this Complaint with the same force and effect as if set forth at length herein.

131.    As a consequence of each of Wells Fargo, Owner Trustee's and Zhonglong's defaults under the Loan Agreement, the Lease Agreement, and the Lease Assignment, CIT FINANCE is entitled to immediate possession of the Aircraft and Aircraft Documents pursuant to the express terms of the Loan Agreement and the Mortgage.

132.    As a consequence of each of Wells Fargo, Owner Trustee's and Zhonglong's defaults under the Loan Agreement, CIT FINANCE is entitled to immediate possession of the Aircraft and Aircraft Documents pursuant to New York Uniform Commercial Code § 9-609.

133.    As a consequence of each of Wells Fargo, Owner Trustee's and Zhonglong's defaults under the Loan Agreement, CIT FINANCE is entitled to immediate possession of the Aircraft and Aircraft Documents pursuant to Article 8 of the Cape Town Convention.

134.    Based on the foregoing, CIT FINANCE is entitled to an Order specifically compelling Wells Fargo, Owner Trustee, Zhonglong, and Corporate Jet Management to stop operating the Aircraft and for the Aircraft to be returned to CIT in compliance with the Instruction to Return Aircraft dated September 11, 2015.

### FOURTH CLAIM FOR
### INJUNCTIVE RELIEF
### (CAPE TOWN CONVENTION AND AIRCRAFT PROTOCOL)

135.    CIT FINANCE repeats and realleges each and every allegation contained within paragraphs 1 through 134, inclusive, of this Complaint with the same force and effect as if set forth at length herein.

136.     Pursuant to Article 8 of the Cape Town Convention, CIT FINANCE is entitled to take possession of the Aircraft and Aircraft Documents following occurrence of an Event of Default as set forth in the Loan Agreement.

137.     Pursuant to the Mortgage, Wells Fargo, Owner Trustee and Zhonglong have agreed that CIT FINANCE is entitled to take possession and control of the Aircraft and Aircraft Documents upon the occurrence of an Event of Default.

138.     Pursuant to Article 13 of the Cape Town Convention, CIT FINANCE may, pending final determination of its claims, obtain, *inter alia*, (a) preservation of the Aircraft and its value, and (b) possession, control, and custody of the Aircraft.

139.     As a result of the foregoing, Wells Fargo, Owner Trustee, Zhonglong, and Corporate Jet Management should be preliminarily and permanently enjoined from operating the Aircraft and directed to return the Aircraft and Aircraft Documents in accordance with the provisions of the Loan Documents.

## FIFTH CLAIM FOR
## INJUNCTIVE RELIEF

140.     CIT FINANCE repeats and realleges each and every allegation contained within paragraphs 1 through 139, inclusive, of this Complaint with the same force and effect as if set forth at length herein.

141.     CIT FINANCE will be irreparably harmed if Wells Fargo, Owner Trustee, Zhonglong, or Corporate Jet Management continues to possess the Aircraft and Aircraft Documents.

142.     By contrast, Wells Fargo, Owner Trustee, Zhonglong, and Corporate Jet Management will not suffer any legally cognizable harm if forced to give up possession of the Aircraft and Aircraft Documentation.

26

143.    Wells Fargo, Owner Trustee and Zhonglong have provided no valid justification for their failure to make payments in accordance with the terms of the Loan Agreement.

144.    Under these circumstances, CIT FINANCE has a very high likelihood of success on the merits of its action, and therefore Wells Fargo, Owner Trustee, Zhonglong, and Corporate Jet Management should be enjoined from operating the Aircraft and directed to return the Aircraft and Aircraft Documents in accordance with the provisions of the Loan Documents.

WHEREFORE, Plaintiff CIT FINANCE demands judgment and relief against Defendants as follows:

(1)    On the First and Second Claims, imposing liability on Wells Fargo, Owner Trustee and Zhonglong and awarding Plaintiff damages in an amount to be determined at trial, but not less than $16,111,456.58, plus interest, costs, and attorneys' fees;

(2)    On the Third Claim, decreeing that

a.    Plaintiff is entitled to immediate and exclusive possession of the Aircraft and Aircraft Documents;

b.    Plaintiff is entitled to such remedies as are available at law to secure possession of the Aircraft and Aircraft Documents if Wells Fargo, Owner Trustee, Zhonglong, Corporate Jet Management, or any other person shall refuse to immediately surrender possession to Plaintiff;

c.    Wells Fargo, Owner Trustee, Zhonglong, and Corporate Jet Management shall cooperate with Plaintiff and turn over the Aircraft and Aircraft Documents to Plaintiff in accordance with the terms of the Loan Documents;

d.    Wells Fargo, Owner Trustee, Zhonglong, and Corporate Jet Management, and any person under their control, is prohibited, without the express written consent of Plaintiff, from operating, transferring or surrendering the Aircraft and Aircraft Documents and is prohibited from interfering in any manner with Plaintiff's access to the Aircraft and Aircraft Documents.

(3)    On the Fourth Claim, a preliminary and permanent injunction prohibiting defendants Wells Fargo, Owner Trustee, Zhonglong, and Corporate Jet Management from operating the Aircraft other than for purposes of returning it to Plaintiff in accordance with the

terms of the Loan Documents, and directing the return of the Aircraft and Aircraft Documents to Plaintiff;

(4)    On the Fifth Claim, a preliminary and permanent injunction prohibiting defendants Wells Fargo, Owner Trustee, Zhonglong, and Corporate Jet Management from operating the Aircraft other than for purposes of returning it to Plaintiff in accordance with the terms of the Loan Documents, and directing the return of the Aircraft and Aircraft Documents to Plaintiff.

(5)    On the First, Second, Third, Fourth and Fifth Claims, such other, further and different relief as this Court deems just and proper together with interest, costs, and attorney's fees.


Dated: New York, New York
       September 11, 2015


                                   HOLLAND & KNIGHT LLP


                           By:  _John M. Toriello_____
                                John M. Toriello
                                Marc L. Antonecchia

                                31 West 52nd Street
                                New York, New York 10019
                                (212) 513-3200

                                *Attorneys for Plaintiff*
                                *CIT FINANCE LLC*